FILED
IN CLERKS OFFICE
2021 JUL -7 PM 4:47
U.S. DISTRICT COURT
DISTRICT OF MASS.

FILED
IN CLERKS OFFICE
2021 JUL -7 PM 4:47
U.S. DISTRICT COURT
DISTRICT OF MASS.

# Schultz Chan, Songjiang Wang, Plaintiff,

# Sarah Walters, et al., Defendants.

# United States District Court, Massachusetts.

**Defendants:**

David J Cirilli (Cirilli), FBI Agent

Sarah E Walters (Walters), Former Assistant United States Attorneys, District of Massachusetts

Stephen E Frank (Frank), Assistant United States Attorney, District of Massachusetts

Jordi de Llano (de Llano), Assistant United States Attorney, District of Massachusetts

Kriss Basil (Basil), Assistant United States Attorney, District of Massachusetts

## I. Background

Below is the chorology of the case.

• On June 7, 2016 around 6:00 am, Chan met with FBI agents Cirilli and McKay in an office building. Around the same time, Wang met with two other FBI agents(Ryan Lane and Janiffer Hale Keenan) in his residence.

• On June 8, 2016, SEC sent a list of 10 requests to Akebia; between June and August 2016, Akebia provided written responses to these 10 requests, all responses were copied to Walters and Frank.

• On June 13, 2016, Cirilli signed a criminal complaint affidavit (the 2016 Affidavit) against Chan.

• On September 13, 2016, an indictment was returned against Chan, and Cirilli provided testimonies to the grand jury to secure the indictment.

• On September 20, 2016, arraignment was made for Chan, and set October 20, 2016 as the deadline for automatic discovery.

• Around the end of November 2016, after reviewing the evidences, Chan's lawyer asked Walters and Frank to drop the case, because there is no evidence of any criminal activities; early December 2016, Chan's lawyer asked them again to drop the case, they refused again.

• On December 15, 2016, Chan sent an email to Carmen Ortiz (former U. S. Attorney), in the email, he stated that, Cirilli fabricated the 2016 affidavit, and Walters and Frank tried to conceal

exculpatory evidence. A reminder was sent to Ortiz on January 3, 2017, to make that sure she received the earlier email.

- On January 27, 2017, Chan filed a motion to dismiss the indictment.

- On February 6, 2017, Cirilli signed another criminal complaint affidavit (the 2017 Affidavit) against Wang.

- On February 7, 2017, Wang was arrested at his home and Cirilli led FBI agents searched Wang's house and collected several USB drives, removable hard drives, and laptops including the work computer of Wang's wife. Wang's wife had to spent thousands of dollars to hire an attorney to get her work computer back.

- On March 28, 2017, a superseding indictment was returned against Chan and Wang, once again, Cirilli provided testimonies to the grand jury to secure the superseding indictment.

- On April 5, 2017, arraignment was made for Chan and Wang. After the arraignment, Chan's lawyer asked Walters for the FINRA related documents, Walters told his lawyer that the evidences were not discoverable. Walters left U. S. Attorney office shortly after the arraignment.

- On May 30, 2017, after multiple attempts to obtain the FINRA related documents, Chan filed a compel discovery for the FINRA documents.

- On June 8, 2017, Chan left a voice mail at the U. S. probation office, stating that Walters, Frank and Cirilli repeatedly lied in this case, asking the district court to investigate. Frank played the voice mail in a court hearing on July, 7, 2017.

- Around July 2017, de Llano joined the case.

- On August 3, 2017, Chan sent an email to de Llano, stating that repeated lies and frauds were committed by Walters, Frank and Cirilli in this case. In the email, Chan cited case law from the second circuit, to remind de Llano that, as a law enforcement officer, he has a duty to intervene when he becomes aware that other officers violated a citizen's constitutional right.

- On October 23, 2017, defendants filed a motion to dismiss the superseding indictment.

- Around the end of January 2018, Frank left the case, and Basil joined the case.

- On March 15, 2018, Chan sent an email to de Llano, asking for the list of SEC requests to Akebia and Akebia's written responses to the SEC requests. Also, in this email, Chan believed that perjured testimonies were presented to the grand jury for the indictment and superseding indictment, he was anxiously waiting to confirm this by receiving the grand jury minutes. Shortly after this email, the list of SEC requests to Akebia, and most of Akebia written responses to the SEC requests (except for request #1) were disclosed to defense. All Akebia's written responses were copied to Walters and Frank.

- On April 12, 2018, because of non-disclosure of Akebia's written response to SEC request #1 after multiple attempts, Chan sent another email to de Llano, asking him to disclose the Akebia's written responses to SEC request #1.

- On June 5, 2018, the second superseding indictment (SSI) was returned, the SSI was identical to the superseding indictment, except to correct a misquoted stock price. Around that time, defense received the list of government witness for the pending trial, Cirilli was not on the list. Chan's lawyer asked de Llano and Basil that, whether Cirilli testified in grand jury proceedings, de Llano and Basil did not respond this request.

- On June 8, 2018, Chan sent an email to the trial court judge, stating that he believed: (1) Walters, Frank and Cirilli conspired to fabricate false and fraudulent criminal complaint affidavits; (2) Walters, Frank and Cirilli conspired to present false testimonies to the grand jury. For the sake of justice and fairness, Chan asked the judge to order the government to disclose the grand jury minutes before trial.

- On June 18, 2018, at the final pretrial conference, defense asked for FINRA referral letter and grand jury minutes before trial, both requests were denied.

- From June 25, 2018 to July 10, 2018, a jury trial was held, and Chan testified at trial. Cirilli sat through trial, but did not testify.

- On July 24, 2018, defendants filed Rule 29 motion, and the trial court judge denied the Rule 29 motion on October 24, 2018.

- On November 2, 2018, defendants filed a compel discovery motion for FINRA referral letter and grand jury minutes.

- On November 5, 2018, Chan was sentenced 36 months in prison, and on November 13, 2018, Wang was sentenced 6 months in prison. The judgements were entered on December 3, 2018, and amended judgements were entered around August 2019. The sentence and judgements were entered without consideration of the November 2, 2018 discovery motion. Both Chan and Wang appealed their judgements in 2018 and 2019.

- On November 6, 2020, Chan sent an email to Basil, asking him to disclose Cirilli's grand jury testimonies and other exculpatory evidences. On December 24, 2020, Chan sent a reminder to Basil, stating that he has a duty to disclose the evidences that Chan asked for on November 6, 2020.

- On November 24, 2020, defense filed a motion to the trial court, asking the judge to make a ruling on the November 2, 2018 discovery motion. On November 25, 2020, the trial court judge denied both motions (one filed on November 2, 2018, the other filed on November 24, 2020) for lack of jurisdiction.

- On January 29, 2021, Chan filed 2255 motion in the district court of Massachusetts, asking the court to vacate the judgement against him, and order the government to disclose FINRA referral letter and Cirilli's grand jury testimonies.

## II. Prosecutorial Misconducts

In this complaint, we allege that all defendants (they are all government agents), under color of federal law, intentionally and repeatedly violated Chan and Wang's constitutional rights. Specifically, the following outrageous prosecutorial misconducts will be documented:

- Government agents conspired to fabricate false and fraudulent criminal complaint affidavits.
- Government agents conspired to tamper with exculpatory evidences.
- Government agents conspired to provide false testimonies to the grand jury.
- Government agents conspired to conceal exculpatory evidences from defendants.
- Government agents conspired to violate defendants' fundamental right to a fair trial.
- Government agents conspired to prolong the case after multiple requests to stop it.

## III. Complaints

### Count 1: Conspired to fabricate false and fraudulent criminal complaint affidavits

The Fourth Amendment to the Constitution enshrines the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures; and establishes that no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly, describing the place to be searched, and the persons or things to be seized; U.S. Const. amend. IV.

FBI agent Cirilli filed two criminal complaint affidavits, one against Chan on June 13, 2016, the other against Wang on February 6, 2017. Cirilli sat through the whole trial, but did not testify at trial.

### A. The 2016 Affidavit

On June 13, 2016, Cirilli signed a criminal complaint affidavit to support the arrest warrant. The affidavit stated that "In an interview with FBI agents on or about June 7, 2015, CHAN admitted that he traded in Akebia shares while aware of the preliminary Phase 2 Results. CHAN further admitted that, at the time he traded, he was aware of a 'blackout period' issued by Akebia, meaning that no Akebia employee, including CHAN, was permitted to trade in Akebia securities. Finally, CHAN admitted that he knew that the preliminary Phase 2 Results constituted material information."

FBI agent McKay's trial testimonies prove that this affidavit was fabricated by Cirilli, the above statements were not supported by evidence admitted at trial. Also, both the Akebia email from Karen Annis to Jason Chan (the Annis email) and Akebia FINRA report, prove that Chan became aware of the 2015 Phase 2 results after 3:10 pm on August 21, 2015, and his trade record proves that he did not trade Akebia stock after having possession of this information. Also, Walters, Frank and Cirilli knew the Akebia FINRA report before June 7, 2016.

The Annis email, Akebia FINRA report, and FBI agent McKay's trial testimonies, prove that Walters, Frank and Cirilli knowingly and deliberately, or with a reckless disregard of the truth, fabricated false and fraudulent statements in the 2016 affidavit; and that such statements were necessary to the finding of probable cause. Additionally, the exculpatory evidences (the Annis email and Akebia response to SEC request #1) were tampered with by Walters, Frank and Cirilli, infra.

B. The 2017 Affidavit

On February 6, 2017, Cirilli filed another criminal complaint affidavit against Wang to support the arrest warrant. The affidavit stated that, Among the manner and means by which WANG and Chan carried out the conspiracy was the following:

a. In advance of each of the Pharm Co. 1 November 26 Announcement, the Pharm Co. 1 December 13 Announcement, and the Pharm Co. May 1 Announcement, WANG provided Chan with material nonpublic information about the studies discussed in those announcements.

b. Chan purchased shares in Pharm Co. 1 while in possession of the material nonpublic information received from WANG.

c. In advance of the Pharm Co. 2 September 8 Announcement, Chan provided WANG with material nonpublic information regarding the study discussed in that announcement.

d. WANG purchased shares in Pharm Co. 2 while in possession of material nonpublic information received from Chan.

However, evidences at trial prove the falsity of this affidavit. In fact, trial evidence proves that Wang did not have material nonpublic information related to the Pharm Co. 1 November 26 announcement and the Pharm Co. 1 December 13 announcement; also, there is no evidence that Wang provided Chan with material nonpublic information about the Pharm Co. 1 May 1 announcement, and there is no evidence that Chan provided Wang with material nonpublic information about the Pharm Co. 2 September 8 announcement.

Additionally, there is no evidence at trial that Chan purchased shares in Pharm Co. 1 while in possession of the material nonpublic information received from Wang. In fact, at trial Chan provided uncontested explanations for his purchases of Pharm Co. 1 stock, based solely on public information. Also, there is no evidence at trial that Wang purchased shares in Pharm Co. 2 while in possession of the material nonpublic information received from Chan; during his interview with FBI agents, Wang provided uncontested explanations for his purchases of Pharm Co. 2 stock, based on public information.

These prove that, just like what they did in the 2016 affidavit, once again Walters, Frank and Cirilli deliberately fabricated the false and fraudulent statements in the 2017 affidavit.

**Count 2: Conspired to tamper with exculpatory evidences**

The following exculpatory evidences were tampered with by Walters, Frank, Cirilli, Jordi de Llano, and Kriss:

### A. The Annis email

The Annis email contains the password protected top line results for the Akebia 2015 Phase 2 study, it was the first time that Chan had possession of material nonpublic information. However, Chan's last purchase of Akebia stock was a limit order, which was placed at 6:25 am on August 21, 2015 (about three hours before market open), he did not buy Akebia stock after receiving this email, and he did not sell Akebia stock shortly after the September 8, 2015 public release of the study results.

Around March 2018, Chan's lawyer asked government agents for this email, he was told by government agents that this email could not be found.

### B. The Akebia response to SEC request #1

On June 8, 2016, SEC sent a list of 10 requests to Akebia. Between June and August of 2016, Akebia provided written responses to these SEC requests, all responses were copied to Walters and Frank.

Around March 2018, Chan's lawyer asked government agents for the list of SEC requests to Akebia and Akebia's written responses to SEC, the list of SEC requests and all responses (except for response to SEC request #1) were disclosed. On April 12, 2018 at 3:24 pm, Chan sent an email to de Llano, asking for the Akebia written response to SEC request #1. Chan was told by his lawyer that this evidence could not be found.

Akebia's written response to SEC request #1 proves that, Chan did not have material nonpublic information before August 21, 2015 at 3:10 pm, and trading record proves that he did not buy Akebia stock after August 21, 2015 at 3:10 pm.

### C. The Merrimack response to FINRA request.

Merrimack's written response to FINRA on June 9, 2014, clearly states that 'No MACK personnel has access to ' material inside information during the trial. The material information, preliminary results, 'were available internally on April 19, 2014'. Government never mentioned this FINRA response in the case and excluded this response from trial evidence document pool.

### D. Multiple statements to the court and jury.

For insider trading case, the specific time of trading and the specific time of possessing Material Non-public Information are crucial to judge an insider trading is legal or illegal. Llano and Basil intentionally temper and fabricate the time points of stock trading and possessing MNPI to mislead Jury and Judge. In

trial open session, they said 'In August 2015, when he(Chan) had new information about a clinical study' 'They bought on the same day or on consecutive days going forward numerous months' In Government opposition to defendant's motion, they claimed 'Wang possessed material non-public information about MM-398 before April 2014' 'Wang and Chan's interactions in the fall of 2013'. 'from the summer of 2013', etc. In ' UNITED STATES' SURREPLY TO DEFENDANTS' JOINT REPLY MEMORANDUM TO THE GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION ', they state 'before November 2013 ' 'in fall 2013' 'in April 2014' 'in Summer'. All above clearly show government set a wider time frame or an open starting time frame and claim defendant possessing MNPI during that period of time to mislead jury and the court.

### Count 3: Conspired to provided perjured testimonies to the grand jury

Perjured testimonies were presented to the grand jury to bias against defendants during the grand jury proceedings.

### A. Perjuries in the September 13, 2016 grand jury proceeding

In securing the September 13, 2016 indictment against Chan, by using the 2016 affidavit and FINRA referral letter, we believe that Cirilli provided false testimonies to the grand jury.

### B. Perjuries in the March 28, 2017 grand jury proceeding

In procuring the March 28, 2017, superseding indictment against Chan and Wang, by using the 2017 affidavit, we believe that Cirilli provided false testimonies to the grand jury.

These prove that Walters, Frank and Cirilli conspired to present false testimonies to the grand jury to secure the indictments against Chan and Wang.

### Count 4: Conspired to violate defendants' constitutional right

### A. Fabricating false and fraudulent criminal complaint affidavits.

See Count 1, supra.

### B. Tampering with exculpatory evidences

See Count 2, supra.

### C. Perjuries in grand jury proceedings

See Coun 3, supra.

### D. Trying to conceal exculpatory evidences

In a letter (dated October 20, 2016) to defense counsel, Walters and Frank stated that "The government is unaware of any information that would tend directly to negate the defendant's guilt concerning any count in the indictment". This statement is false. In fact, Walters and Frank knew the Akebia FINRA report and the FINRA referral letter before June 7, 2016; also, they knew the Annis email, and Akebia response to SEC request #1 before September 13, 2016. The Akebia FINRA report, FINRA referral letter, the Annis email and Akebia response to SEC request #1, prove that Chan became aware of the 2015 Phase 2 study results after 3:10 pm on August 21, 2015, and Chan's trade record shows that he did not purchase Akebia stock after having possession of the study results. The exculpatory evidences (Akebia FINRA report, FINRA referral letter, the Annis email and Akebia response to SEC request #1) on record directly contradict Count 1 in the original indictment.

In the December 15, 2016 email to Ms. Ortiz from Chan, Chan mentioned to Ms. Ortiz that Walters and Frank deliberately not to disclose exculpatory evidences (including Akebia FINRA report and the Annis email). Walters and Frank did not do anything after this notice.

On April 5, 2017, Chan's attorney asked Walters verbally for the FINRA related documents (The documents clearly prove that Chan did not trade Akebia stock while in possession of material nonpublic information, they also prove that Walters, Frank and Cirilli deliberately fabricated false and fraudulent criminal complaint affidavits against Chan and Wang). Walters stated that the documents were not discoverable. After learning the verbal request from his lawyer, Chan sent an email, asking him to submit a formal request, because it is unconstitutional for not disclosing exculpatory evidences. Chan's attorney sent a formal request, Walters and Frank refused to disclose them. On May 30, 2017, Chan's attorney filed a motion to compel them to disclose the evidences.

The evidence prove that Walters and Frank intentionally tried to hide exculpatory evidences to defense, which is unlawful. Also, Walters and Frank conspired with others to tamper with exculpatory evidences (the Annis email and Akebia response to SEC request #1).

### E. Refusing to disclose exculpatory evidences

In early June 2018, after receiving the government list of trial witness, Chan's lawyer asked de Llano and Basil that whether Cirilli testified in grand jury proceedings, they did not respond to the request. On June 18, 2018, at the final pretrial conference, the requests for FINRA referral letter and grand jury minutes were made; although de Llano and Basil have a duty to disclose these evidences before trial, they did not do anything.

On November 2, 2018, Chan's lawyer filed a posttrial compel discovery for the FINRA referral letter and grand jury minutes. Clearly, de Llano and Basil knew that FINRA referral letter, grand

jury minutes and evidences admitted at trial would prove that perjured testimonies were presented to the grand jury to secure the indictments in this case, and they have the constitutional duty to disclose these evidences, but they refused to disclose them.

On November 6, 2020, while the court of appeals was reviewing the appeal, Chan sent an email to Basil, asking him to disclose the FINRA referral letter and grand jury minutes to defense and the court of appeals; also, in the email, Chan asked Basil to disclose the Annis email and Akebia response to SEC request #1. On December 24, 2020, Chan sent a reminder to Basil, repeated his earlier requests on November 6, 2020. Basil did not respond to these requests.

These evidences prove that, de Llano and Basil knew that perjured testimonies were presented to the grand jury by Cirilli before trial, and they had a constitutional duty to disclose exculpatory evidences, they repeatedly refused to disclose the evidences to defense both pre- and post-trial, in violation of defendants' fundamental right to a fair trial.

### Count 5: Malicious prosecution

#### A. Fabricating false and fraudulent criminal complaint affidavits

See Count 1, supra.

#### B. Tampering with exculpatory evidences

See Count 2, supra.

#### C. Perjuries in grand jury proceedings

See Count 3, supra.

#### D. Concealing exculpatory evidences

See Count 4, supra.

#### E. Refusing to stop the case after multiple notifications

Multiple opportunities were offered to Walters and Frank to stop this unjust prosecution, they kept pursuing this frivolous case with malicious intent. All defendants prosecuted the case with malice, by using fraudulent deceitful misconducts. See supra.

In early December 2016, after reviewing the evidence, Chan's lawyer told Walters and Frank that Chan's trades of Akebia stock were legal, and there was no evidence to suggest illegal tipping by Chan to anyone; the defense attorney suggested that they stopped the case. But Walters and

Frank refused to drop it. Below is an email from Chan's defense attorney on December 13, 2016: "They have told me repeatedly they will not drop the case under any circumstances. They told me not to raise this issue again with them. Negotiations are over. Now it's just a legal fight."

On December 15, 2016, Chan sent a personal plea email to Ms. Ortiz (former U. S. Attorney), asking her to intervene to stop the unjust prosecution. A follow up email was sent on January 3, 2017, to make sure that Ms. Ortiz received the message. In this email, Chan stated that false information was presented in the 2016 affidavit, and Walters and Frank tried to withhold exculpatory evidences. Ms. Ortiz did not respond to this email.

On January 27, 2017, Chan filed motion to dismiss the indictment. However, in order to continue the frivolous case, on February 6, 2017, Walters, Frank and Cirilli deliberately fabricated the 2017 affidavit.

On June 8, 2017, Chan left a voice mail at probation office, he stated that Walters, Frank and Cirilli repeatedly lied in his case, asked the court to investigate. Frank played Chan's voice mail in a court hearing on July 7, 2017, but no action was taken to stop the case.

On August 3, 2017, Chan sent an email to de Llano; in the email, Chan stated that repeated lies and frauds were committed in this case. No action was taken. On October 23, 2017, Chan filed a motion to dismiss the superseding indictment.

### Count 6: Failure to intercede

The duty to intercede has been expressed broadly by the Second Circuit:

It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.... In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir.1994).

An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know ... that any constitutional violation has been committed by a law enforcement official. Anderson, 17 F.3d at 557.

Based on the allegations provided above, all defendants knew or had reason to know that, Chan and Wang's constitutional rights were violated, multiple notifications were provided to them to stop. But no action was taken to stop the abuse.

## IV. Damages

As a direct result of the following repeated unlawful, fraudulent and deceitful actions by all defendants, Chan and Wang suffered and continues to suffer economic and non-economic damages.

(1) Fabricating false and fraudulent criminal complaint affidavits against Chan (on June 13, 2016) and Wang (on February 6, 2017).

(2) Tampering with exculpatory evidences.

(3) Providing perjured testimonies to the grand jury.

(4) Refusing to disclose exculpatory evidences to defense both pre- and post-trial.

(5) Refusing to stop the malicious prosecution after multiple notifications of prosecutorial misconducts.

(6) Fabricating and tempering the time frame of trading and possessing MNPI to misleading the jury and judge.


Due to the extraordinarily reprehensible, repeatedly unlawful, fraudulent and deceitful misconducts by Walters, Frank and Cirilli, Chan and Wang are seeking compensation and punitive damages from each one of them. Also, Chan and Wang are seeking compensation damages from de Llano and Basil for their failure to intervene and refusing to disclose exculpatory evidences, after multiple notifications of constitutional right violations.